IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| CYNETHIA TAYLOR,<br><br>    *Plaintiff*,<br> v.<br><br>WASHINGTON GAS LIGHT COMPANY<br>and WGL HOLDINGS, INC.,<br><br>    *Defendants*. | Case No. 1:20-cv-01390 (PTG/TCB)<br>Hon. Patricia Tolliver Giles |

## **MEMORANDUM OPINION & ORDER**

  This matter comes before the Court on Defendants Washington Gas Light Company's and WGL Holdings, Inc.'s (collectively, "Defendants") Motion for Summary Judgment ("Motion") (Dkt. 33). Plaintiff Cynethia Taylor ("Plaintiff") was employed by Washington Gas Light Company ("Washington Gas") and sued Defendants for hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964. Essentially, Plaintiff alleges that she was subjected to a hostile work environment because of the sexually harassing conduct committed by a co-worker and because she was terminated upon making a report. In response, Defendants maintain that Washington Gas immediately investigated Plaintiff's allegations, and then suspended and terminated the co-worker. Defendants maintain that Plaintiff was, in fact, terminated based on her breach of the company's Code of Business Ethics, and a prior documented disciplinary issue.

  The issues before the Court are: (1) whether Plaintiff establishes a *prima facie* case for her hostile work environment claim; and (2) even if Plaintiff could establish a *prima facie* case for

1

her retaliation claim, whether Plaintiff can demonstrate that Washington Gas's legitimate, nonretaliatory explanations for her termination were a pretext for retaliation. As to the first issue, the Court finds that Plaintiff does not establish a *prima facie* case for her hostile work environment claim because she cannot show that her co-worker's conduct was imputable to Washington Gas. As to the second issue, the Court finds that Plaintiff cannot show that her employer's legitimate, nonretaliatory explanations for her termination were a pretext for retaliation. For these reasons and those more fully stated below, the Court **GRANTS** the Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual Background

Having considered the Motion (Dkt. 33), Defendants' Memorandum of Law in Support (Dkt. 34), Plaintiff's Opposition to the Motion (Dkt. 37), Defendants' Rebuttal Brief in Support (Dkt. 38), and the arguments of counsel, the summary judgment record establishes the following undisputed facts:

Plaintiff worked as a computer-aided dispatch specialist at Defendant Washington Gas Light Company.[1] Dkt. 34 at ¶ 2.[2] Washington Gas hired Plaintiff in 2015 to work in the company's Springfield, Virginia office. *Id.* Dwayne Briscoe was Plaintiff's peer-level, co-worker. *Id.* at ¶ 6. Briscoe did not supervise Plaintiff nor anyone else at Washington Gas. *Id.*

On January 29, 2020, Briscoe approached Plaintiff at her desk with a perceptible erection, telling her: "See what you do to me."[3] *Id.* at ¶ 31; Dkt. 34-3 at 46. Plaintiff then took her phone

---

[1] Defendant WGL Holdings, Inc. is a holding company. Its principal subsidiary entity is Defendant Washington Gas Light Company.

[2] All citations to numbered paragraphs are to the numbered paragraphs in Defendants' Statement of Undisputed Material Facts. *See* Dkt. 34 at pp. 3–13.

[3] According to Plaintiff, this was not the first time Briscoe engaged in this type of behavior. On two prior occasions, he approached her with a noticeable erection through his pants. Dkt. 34 at ¶ 52. Additionally, Plaintiff recounts

and began filming the encounter. Dkt. 34-3 at 46. Briscoe asked Plaintiff if she was recording him; in response, Plaintiff confirmed that she was indeed filming the incident. *Id.* Then, Briscoe asked Plaintiff why she was recording him, and Plaintiff responded: "Why shouldn't I?" *Id.* Briscoe asked Plaintiff to delete the video and Plaintiff responded "no." *Id.* Plaintiff also told Briscoe that she would post the video online or on social media.[4] Dkt. 34 at ¶ 37. Shortly thereafter, Briscoe approached Plaintiff's desk, where she was looking at a pair of Nike tennis shoes online. *Id.*; Dkt. 34-3 at 47. Briscoe asked her if she liked the shoes, and Plaintiff responded "yes." Dkt. 34 at ¶ 39; Dkt. 34-3 at 47. Then, Briscoe asked Plaintiff how much the shoes cost; in response, Plaintiff nodded her head toward the price, which was roughly $160. Dkt. 34 at ¶ 39; Dkt. 34-3 at 47. Briscoe left and later returned with $160 in cash, tossed it on Plaintiff's desk, and walked away. Dkt. 34 at ¶ 39; Dkt. 34-3 at 48. Plaintiff picked up the money, counted it, and put it in her wallet. Dkt. 34 at ¶ 39; Dkt. 34-3 at 49.

On February 5, 2020, Plaintiff reported this incident to her supervisor, Tamara Neal, and informed her that she had been subject to similar incidents and lewd comments from Briscoe in the past.[5] Dkt. 34 at ¶¶ 30, 52. Plaintiff showed Neal the video recording of the incident. *Id.* at ¶ 30. Neal told Plaintiff that she needed to report the issue to Human Resources. *Id.* at ¶ 32. Plaintiff

---

other unwanted sexual advances from Briscoe. He told her that he wanted to give her "hugs and kisses" and commented on the sexual dreams he had about her. *Id.* Plaintiff never reported this behavior to management. Dkt. 34 at ¶¶ 50, 52, 53; Dkt. 34-3 at 44–45.

[4] Plaintiff disputes that her statement about posting the video was a "threat" to Briscoe so that reference has been removed from the undisputed facts.

[5] Plaintiff reported the alleged sexual harassment consistent with Washington Gas's policies. *See* Dkt. 34-5 at 2–3. Washington Gas prohibits "acts of discrimination and harassment, including sexual harassment." *Id.* Washington Gas distributes information about its policies at regular intervals, including statements that "employees who believed they had been subjected to any potential harassment, discrimination, or retaliation should report those issues to the Company for investigation, through any of a multitude of channels, including: (i) their manager or supervisor; (ii) the Company's Ombudsman; (iii) [Emily Roller], as the Manager of Employee Relations; (iv) our Director of Labor and Employee Relations; or (v) the Company's Chief Human Resources Officer." *Id.* Such statements provided email addresses and phone numbers for these resources. *Id.* at 3.

3

stated that she did not want the issue reported to Human Resources because she did not want Briscoe to lose his job. *Id*. Plaintiff also told Neal that Briscoe gave her $160, which she had kept. *Id.* Plaintiff never reported or complained about any other inappropriate behavior from Briscoe. *Id.* at ¶¶ 50, 52, 53.

On February 6, 2020, Neal reported the matter to Human Resources, and Defendant opened an investigation into the conduct, which was led by Emily Roller, Manager, Employee Relations, and Coby Turner, Senior Labor Relations Specialist. *Id.* at ¶ 33; Dkt. 34-7 at 2. On February 7, 2020, Roller and Turner interviewed Briscoe and then suspended him pending the conclusion of the investigation. Dkt. 34 at ¶ 34. On February 10, 2020, Roller and Turner interviewed Plaintiff. *Id.* at ¶ 37.

Washington Gas concluded its investigation shortly thereafter, and Roller and Turner prepared an "Investigation Summary" report. *Id.* at ¶¶ 38, 39; Dkt. 34-7 at 2–5. The report's "Summary Findings" section stated as follows:

> The investigation corroborated Ms. Taylor's complaint. On the video recorded by Ms. Taylor, Mr. Briscoe approached Ms. Taylor at her workstation, displaying a prominent erection, and said to her, "do you see what you do to me?" Ms. Taylor took a video of his genital area and told him she was going to post it on Social Media, but instead sent it to her sister, with the caption "Nut-Ass Coworkers…" Mr. Briscoe left Ms. Taylor's desk and returned later, while she was on the internet looking at shoes. He asked her if she liked the shoes, ascertained the price of the shoes, went to the ATM and made a withdrawal, and put the money on her desk. Security video shows Ms. Taylor counting the money as Mr. Briscoe walked away. She did not return the money. Ms. Taylor waited a week before approaching Ms. Neal to report the incident, who reported it to HR.

Dkt. 34 at ¶ 39; Dkt. 34-7 at 3.

The investigation concluded that Briscoe violated Washington Gas's sexual harassment policy and should be terminated. Dkt. 34 at ¶ 41; Dkt. 34-7 at 4. Briscoe's employment was terminated on February 18, 2020.[6] Dkt. 34-8 at 2–3. The investigation also concluded that Plaintiff

---

[6] Plaintiff does not allege that she experienced inappropriate behavior that constitutes sexual harassment during the

4

"intentionally recorded a video of Briscoe's condition and used it as leverage to elicit a cash payment." Dkt. 34 at ¶ 42; Dkt. 34-7 at 4. The report's findings continued:

> Even if Ms. Taylor did not explicitly demand the money from Mr. Briscoe to maintain her silence, the reasonable inference based on the totality of the evidence in the investigation makes clear that she knowingly and willingly accepted the money for that purpose. She did not return the money and did not indicate that she had any second thoughts about her actions. She was unapologetically frank about this, stating, when asked by Mr. Briscoe and the investigators, that she had not bought shoes, but had kept the money because she needed it. She waited a week before bringing the issue to Ms. Neal's attention and appears to have raised the issue as a titillating fact; she only made the formal, more serious complaint after Ms. Neal stated that she had to report the issue to HR. Her conduct was wholly improper, arguably constituted extortion, and violated the Company's core value of acting with integrity.[7]

Dkt. 34 at ¶ 41; Dkt. 34-7 at 4.

Human Resources also considered Plaintiff's prior discipline by Washington Gas. Dkt. 34 at ¶ 43; Dkt. 34-5 at 7–8. On August 29, 2018, Plaintiff had a workplace altercation with another coworker and "aggressively remov[ed] a monitor stand from a shared workstream which resulted in another employee's laptop tumbling to the ground." Dkt. 34-3 at 83; Dkt. 34 at ¶ 22. When Plaintiff met with her supervisor to discuss the incident, Plaintiff was "confrontational" and raised her voice. Dkt. 34-3 at 83; Dkt. 34 at ¶ 22. As a result, Washington Gas issued a written disciplinary warning to Plaintiff on September 10, 2018 that stated: "Any further incidents of insubordination or unprofessional conduct will result in further disciplinary action, up to and including termination of your employment." Dkt. 34 at ¶ 23.

In consultation with Human Resources, Wendy Trask, Director of Operations, and Mike Marsters, AVP of System Operations, decided to terminate Plaintiff's employment based on the

---

period between when she reported Briscoe's conduct to her supervisor and his termination. Dkt. 34 at ¶ 51.

[7] Washington Gas maintains a Code of Business Ethics that all employees receive and are required to follow. Dkt. 34 at ¶ 14. The company distributes regular communications about it. *Id.* at ¶ 15. The company's Code of Business Ethics describes the company's core values, including the need to "Act with Integrity," which requires employees to be "honest and forthright" and to "act ethically during [their] employment." *Id.* at ¶ 19. Each year, all employees review and certify that they understand and agree to abide by the Code of Business Ethics to promote honesty, integrity, and accountability in the workplace. *Id.* at ¶¶ 15, 16; Dkt. 34-5 at 3.

investigation's findings and the fact that Plaintiff had previously been disciplined for improper workplace behavior.  *Id.* at ¶¶ 43, 44.  Plaintiff's employment was terminated on February 18, 2020.  *Id.* at ¶ 46.

### B. Procedural Background

On April 2, 2020, Taylor filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Title VII violations based on sex discrimination and retaliation.  Dkt. 1 at 2.  On August 19, 2020, Taylor received a Notice of Right to Sue.  *Id.*  On November 16, 2020, Taylor filed a two-count Complaint in this Court.  Dkt. 1.  In Count I, she alleges that Washington Gas discriminated against her by creating a hostile work environment in violation of Title VII.  *Id.*  In Count II, she alleges that Washington Gas retaliated against her for engaging in protected equal employment opportunity activity in violation of Title VII.  *Id.*  On December 3, 2020, Washington Gas and WGL Holdings filed a Motion to Dismiss Count I.  Dkt. 8.  On September 9, 2021, this Court denied the motion.  Dkt. 36.  On August 26, 2021, Defendants filed a Motion for Summary Judgment.  Dkt. 33.  Plaintiff opposed that motion on September 9, 2021.  Dkt. 37.  Defendants submitted a rebuttal brief in support of their Motion for Summary Judgment on September 15, 2021.  Dkt. 38.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).  All inferences must be made in favor of the

nonmoving party. *Hawkins v. McMillan*, 670 F. App'x 167, 168 (4th Cir. 2016). A party survives summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III.   DISCUSSION

Plaintiff claims that she was subjected to a hostile work environment based on her sex and retaliation in violation of Title VII. For the reasons set forth below, summary judgment is granted in favor of Defendants on both of Plaintiff's claims.

#### A.   HOSTILE WORK ENVIRONMENT CLAIM

To establish a claim for a hostile work environment, a plaintiff must show that there was: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex…; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 325, 334 (4th Cir. 2010)); *see also Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020). Defendants do not dispute that Plaintiff has shown that she was subject to unwelcome conduct based on her sex. However, Defendants claim that the conduct: (1) was not "sufficiently severe or pervasive" to create an abusive work environment; and (2) is not "imputable to the employer." *Id.* Because it is clear that the conduct Plaintiff complains of is not imputable to her employer, it is unnecessary for the Court to address whether it was "sufficiently severe or pervasive."

If an employee is subjected to harassing conduct by a non-supervisory coworker, then the employer can only be held liable for the nonsupervisory coworker's conduct if her "employer knew

or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'" *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014) (quoting *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995)). There is no precise combination of remedial measures or steps that an employer must take in order to avoid liability. *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 178 (4th Cir. 2009). The Fourth Circuit has considered, among other factors: "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective." *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th. Cir. 2011). Further, "[t]he institution and enforcement of [an antiharassment] policy, in conjunction with an adequate complaint procedure, aid the employer in establishing that it has exercised reasonable care to prevent [harassment]." *Id.* (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 187 (4th Cir. 2001)). "A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." *Id.* at 670 (quoting *Knabe v. Boury Corp.,* 114 F.3d 407, 411–12 n. 8 (3d Cir. 1997)).

Plaintiff alleges that Washington Gas did not respond to her complaint of sexual harassment with "a reasonable approach to stop the harassment."[8] Dkt. 37 at 21. However, the record shows the opposite. In response to Plaintiff's report of sexual harassment, Washington Gas took immediate steps to investigate and remedy the situation. According to the undisputed facts, Washington Gas responded to Plaintiff's February 5 complaint by initiating an investigation into Briscoe's conduct on or before February 7, interviewing him on February 7, suspending him pending the conclusion of the investigation, and ultimately terminating his employment on

---

[8] Plaintiff does not allege that Washington Gas was aware of Briscoe's inappropriate conduct before Plaintiff reported it to her supervisor on February 5 or that Washington Gas should have known about Briscoe's inappropriate conduct.

February 18. These actions were prompt and sufficient to prevent future instances of Briscoe's sexual harassment in the workplace. *Xerxes Corp.*, 639 F.3d at 670 ("[R]esponses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination.") (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676–77 (10th Cir. 1998)).

Indeed, the record shows that Washington Gas's response was effective at preventing future harassment because, as Plaintiff acknowledges, she did not experience additional instances of sexual harassment after she reported Briscoe's inappropriate conduct to her supervisor. Because Defendants' remedial action "effectively stop[ped] the harassment," it is "deemed adequate as a matter of law." *Id.* Further, this conclusion is bolstered by the fact Washington Gas had a reasonable sexual harassment policy and sent regular communications about the policies and reporting channels available to raise concerns about potentially harassing behavior or other policy violations.

Plaintiff argues that Washington Gas's response was unreasonable because it included the suspension and termination of Plaintiff, in addition to her alleged harasser. In effect, Plaintiff's argument is that Defendant over-corrected the problem by removing the alleged victim of harassment from the workplace. This argument, however, is misplaced as a basis for imputing liability to the employer. *See Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 759 (1998) (noting that "[n]egligence sets a minimum standard for employer liability under Title VII"). The law is clear that when an employee is sexually harassed by a coworker, "the employer may be liable

in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 333–34.  In this case, Washington Gas learned of the offensive behavior only after Plaintiff advised her supervisor on February 5.  Thereafter, Washington Gas took "effective action to stop" the harassment by suspending and ultimately firing Briscoe in response to Plaintiff's report of sexual harassment.  Thus, Briscoe's inappropriate conduct is not imputable to Washington Gas, and Plaintiff's hostile work environment claim fails as a matter of law.

### B.     RETALIATION CLAIM

Plaintiff's retaliation claim also fails because Plaintiff has not produced sufficient evidence in the summary judgment record to permit a reasonable jury to find that Plaintiff's protected activity was the cause of her termination.

Because Plaintiff offers no direct evidence of retaliatory discrimination for her termination, Plaintiff's claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).  Under *McDonnell Douglas*, to establish a *prima facie* case of retaliation, a plaintiff must show: "(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotation marks and citation omitted).  If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to show that its purportedly retaliatory action was in fact the result of a legitimate, nonretaliatory reason. *Id.*  Then, the burden shifts back to the plaintiff to rebut defendant's evidence by demonstrating that its purported nonretaliatory reason was "not its true reason[], but [was] a pretext for discrimination." *Id.* (quoting *Hill v. Lockheed*

10

*Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)); *see also Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010).

Here, Defendants do not dispute that Plaintiff was engaged in a protected activity when she reported Briscoe's inappropriate conduct to her supervisor or that Washington Gas took adverse action against her by terminating her. However, Defendants claim that there is insufficient evidence to show that: (1) a causal relationship exists between the protected activity and the adverse employment activity; and (2) Washington Gas's proffered reason for Plaintiff's termination was a pretext for retaliation.

To establish causation between the protected activity and adverse employment action, Plaintiff must adduce "evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Plaintiff does not offer direct evidence of causation but only relies on the temporal proximity of her termination and her report of sexual harassment to support an inference of causation. It is undisputed that Washington Gas suspended and ultimately terminated Plaintiff almost two weeks after she reported Briscoe's sexual harassment. Such temporal proximity sometimes is sufficient to support an inference of causation between Plaintiff's protected activity and termination. *See, e.g.*, *King v. Rumsfeld*, 328 F.3d 145, 151 & n. 5 (4th Cir. 2003) (finding that a two-and-a-half month gap between protected activity and an adverse employment action was sufficiently narrow to establish the causation prong of the *prima facie* case solely on the basis of temporal proximity); *Coursey v. Univ. of Maryland E. Shore*, 577 F. App'x 167, 175 (4th Cir. 2014) (finding that "the discharge of an employee soon after he engages in a protected activity is strongly suggestive of retaliatory motive, and gives rise to a sufficient inference of causation to

11

satisfy the *prima facie* requirement") (internal quotation marks and citations omitted).

In this case, however, the fact is that Plaintiff reported her own misconduct—her acceptance of $160 in cash from Briscoe after recording the offending video of him and stating she would post it online (which Washington Gas cites as the reason for her termination)—at the same time that she told her supervisor about Briscoe's behavior. Plaintiff's simultaneous self-report of her own questionable conduct belies an inference of causation between Plaintiff's protected activity and termination due to temporal proximity alone. *See Nyimpha v. Ross*, No. 1:19-CV-258, 2020 WL 819839, at *11 (E.D. Va. Feb. 19, 2020) ("Where, as here, the undisputed record evidence indicates that plaintiff was not meeting his employer's expectations at the time of his termination, a plaintiff fails to establish a *prima facie* case of discrimination."). Given these facts, it is not clear that Plaintiff can show a causal connection sufficient to establish a *prima facie* case.

Even assuming *arguendo* that Plaintiff has established a *prima facie* case of retaliation, Defendants have produced persuasive and sufficient evidence of a legitimate, nonretaliatory reason for Plaintiff's termination. Essentially, Washington Gas asserts that it terminated Plaintiff's employment because its investigation found that Plaintiff used the video recording of Briscoe as "leverage to elicit a cash payment from him." Dkt. 34-7 at 4. The company found: "Even if Ms. Taylor did not explicitly demand the money from Mr. Briscoe in exchange for his silence, the reasonable inference based on totality of the evidence in the investigation makes clear that she knowingly and willingly accepted the money for that purpose." *Id.* Plaintiff video-recorded Briscoe engaging in sexually harassing conduct, told him she was going to post the video on social media (whether she had an intention to or not), and later that evening accepted a $160 cash payment from him. *Id.* Washington Gas stated that Plaintiff was thus in violation of

its Code of Business Ethics and, in particular, the "core value of acting with integrity." *Id*. at 2–4.

In making its decision to terminate Plaintiff, Washington Gas also cited Plaintiff's history of inappropriate behavior. Dkt. 34-3 at 85. Plaintiff's history of discipline was documented well before Plaintiff reported Briscoe's offensive conduct. *Id.* ("In September 2018, you received a written disciplinary warning for aggressively mistreating Company property, which caused a colleague's laptop to fall from a workstation to the ground; and for behaving disrespectfully and disruptively toward [sic] your immediate supervisor and the department manager during a conference."); Dkt. 34-3 at 83. When previously counseled, Plaintiff had been warned that further inappropriate behavior could result in additional disciplinary action, including termination. Dkt. 34-3 at 83. Accordingly, Defendants' proffered reason for Plaintiff's termination is legitimate.

Plaintiff argues that that Defendants' legitimate reasons for Plaintiff's termination are pretextual because their investigation's findings are not supported by evidence. However, it was reasonable for Washington Gas to conclude that Plaintiff violated its Code of Business Ethics based on the Plaintiff's own account of accepting cash from Briscoe and her record of prior discipline—which, as discussed above, preceded Plaintiff's report of sexual harassment and was documented at the time. Indeed, Plaintiff admitted that she understood that her behavior appeared "wrong" to others. Dkt. 34-3 at 64–65.

Plaintiff also points to what she alleges are deficiencies with the investigation into her conduct, arguing that these deficiencies support an inference that Defendants' proffered explanation is "unworthy of credence." Dkt. 37 at 16 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000)). Yet, Plaintiff's quibbles with Defendants' investigation,

13

including Plaintiff's beliefs that there should have been a standalone investigation into her behavior and that Washington Gas should have asked her to return Briscoe's payment, are insufficient to demonstrate that Defendants' proffered explanation is a false one. Importantly, the "crucial inquiry is whether the employer acted based on an unlawfully discriminatory motive, 'not the wisdom or folly of the employer's business judgments.'" *Miller v. McWilliams*, No. 1:20-CV-0671, 2021 WL 3192164, at *5 (E.D. Va. July 28, 2021) (quoting *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 383 (4th Cir. 1995)); *see also DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)) (recognizing that courts must not "sit as a kind of super-personnel department weighing the prudence of employment decisions" by second-guessing whether a particular employment decision was "wise, fair, or even correct"). Here, Plaintiff's criticisms about Defendants' investigation merely amount to allegations of the "folly of [the employer's] business judgment," *Jiminez*, 57 F.3d at 383, and are insufficient to "raise an inference of deceit." *Foster*, 787 F.3d at 254 (internal citation omitted). Accordingly, Plaintiff fails to establish that Washington Gas's proffered legitimate nonretaliatory reasons for her termination were a pretext for retaliation and Defendants are entitled to summary judgment on the retaliation claim as a matter of law.

## IV.    CONCLUSION

For the reasons previously stated, Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED**.

It is **SO ORDERED**.

January 24, 2022  
Alexandria, Virginia

Patricia Tolliver Giles  
United States District Judge

14